IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERIC B. SAUB,

    Plaintiff,

v.                                                                       Civil Action No. 3:16CV414

GEORGETTE PHILLIPS, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Eric B. Saub, a Virginia pretrial detainee proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Saub's Amended Particularized Complaint. (ECF No. 20.) The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Saub is currently detained pending his trial in the Circuit Court for the Isle of Wight County, Virginia ("Circuit Court") for first degree murder, use of a firearm to commit murder, and being a felon in possession of a firearm.[2] Saub's trial for the foregoing charges is currently set to begin on July 24, 2017. In a lengthy and rambling Amended Particularized Complaint, Saub alleges that the named Defendants[3] committed various errors related to his criminal

---

[2] *See* http://www.courts.state.va.us/main.htm (select "Case Status and Information;" select "Circuit Court" from drop-down menu; select hyperlink for "Case Information;" select "Isle of Wight Circuit Court" from drop-down menu and follow "Begin" button; type "Saub, Eric," and then follow "Search by Name" button; then follow hyperlinks for "CR16000182," "CR16000183," and "CR16000184").

[3] The named Defendants are: Commonwealth's Attorney Georgette Phillips; Assistant Commonwealth's Attorney Steven Edwards; Judges W. Parker Councill and John F. Daffron, Jr.; Investigators Thomas Potter, Kris Coughlin, Katrina Everett, Matt Van Wassen, and C.B. Nurney of the Isle of Wight Sheriff's Office; Mark Marshall, Sheriff of Isle of Wight County; the Isle of Wight County, Virginia; Assistant Medical Examiner Babatunde Stokes; Magistrates C. Trumble, Mandy Owens, Samuel Perfetti, and Elizabeth Stahlman; Chief Magistrate Sean Dolan; Fred Jackson, the Region 8 Magistrate Supervisor; Apple, Facebook; Cellco Partnership dba Verizon Wireless; and Regus. (Am. Part. Compl. 1–2.)

investigation and proceedings. (Am. Part. Compl. 4–32.)[4] Saub raises 41 "counts" for relief, all of which are extremely repetitive. Given the repetitive nature of Saub's claims, and for the goal of orderly disposition, the Court groups them together either by type of claim or by the Defendants named in the claim.

Saub demands all legal costs, compensatory and punitive damages from each Defendant, injunctive relief, declaratory relief, payment for the value of all of his seized property, payment of all costs related to his "unlawful detention," and release from custody. (*Id.* at 33–40.) As explained below, Saub's Amended Particularized Complaint will be DISMISSED.

### III. ANALYSIS

#### A. Saub's Conspiracy Claims

In the first series of claims, Saub alleges that several Defendants conspired against him to charge him with committing first degree murder despite his professed innocence.

To establish a civil conspiracy under § 1983, Saub must allege facts indicating that the Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). To this end, Saub must allege facts that plausibly suggest "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)). "Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants,

---

[4] The Court utilizes the pagination assigned to Saub's Amended Particularized Complaint by the CM/ECF docketing system. The Court corrects the spelling and punctuation in quotations from Saub's Amended Particularized Complaint.

4

the court may properly dismiss the complaint." *Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996) (citations omitted).

Here, Saub merely alleges that Defendants Coughlin, Phillips, Edwards, Potter, Everett, Nurney, and Van Wassen

> conspired together to fabricate a deceptive and fraudulent case against plaintiff for the murder of his closest friend based on imagination, argument, and the manipulation of innocent evidence of a close platonic friendship without any evidence plaintiff possessed a firearm, used a firearm or murdered his closest friend, Jean Marie.

(Am. Part. Compl. 14.) Saub also alleges that Defendants Phillips, Edwards, Potter, Coughlin, and Everett

> conspired together and did in fact and intentionally conceal and withhold the absolutely exculpatory evidence that the homicide plaintiff is wrongfully charged with committing on Wednesday 4-15-15 did in fact occur two days later on the morning of 4-17-15 as medically determined by the stage of rigor mortis.

(*Id.* at 18.) Saub vaguely mentions that Stokes was involved in this conspiracy as well. (*Id.* at 32.) Nowhere in his Amended Particularized Complaint does Saub provide any facts that plausibly suggest that these Defendants "formed any type of agreement or acted in concert to injure him." *Brown*, 938 F. Supp. at 346. "The mere fact that each of these actors played a part in the events is not sufficient to show such a unity of purpose." *Id.* For this reason, Saub's conspiracy claims will be DISMISSED WITHOUT PREJUDICE.

### B. Prosecutorial Immunity

In the next series of claims, Saub seeks monetary damages, as well as declaratory and injunctive relief, from Defendants Phillips and Edwards, prosecutors for the Isle of Wight County. Prosecutorial immunity, however, bars Saub's claims for monetary damages against them. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Prosecutorial immunity extends to actions taken while performing "the traditional functions of an advocate," *Kalina v. Fletcher*,

522 U.S. 118, 131 (1997) (citations omitted), as well as functions that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. To ascertain whether a specific action falls within the ambit of protected conduct, courts employ a functional approach, distinguishing acts of advocacy from administrative duties and investigative tasks unrelated "to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citation omitted); *Carter v. Burch*, 34 F.3d 257, 261–63 (4th Cir. 1994). Absolute immunity protects those "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273.

In his Amended Particularized Complaint, Saub faults Phillips and Edwards for working with officers of the Orange County, Florida Sheriff's Office to effect a search and seizure of Saub's office in Orlando, Florida. (Am. Part. Compl. 13.) He also asserts that they ordered Saub's financial records from various institutions. (*Id.*) Saub further alleges that Phillips and Edwards conducted a preliminary hearing at which they "abandoned their duty to seek justice continuing a deliberate conspiracy calculated to wrongfully and illegally imprison, maliciously prosecute and attempt to wrongfully convict plaintiff . . . ." (*Id.* at 16.) According to Saub, Phillips and Edwards presented false testimony during this hearing. (*Id.* at 17.) Saub fails to allege, however, that Phillips and Edwards's actions in his pending criminal proceedings were actions taken outside of their roles as advocates for the Commonwealth. *See Imbler*, 424 U.S. at 430 (holding that prosecutorial immunity extends to prosecutor's actions "in initiating a prosecution and in presenting the State's case"). Therefore, Saub's claims for damages against Defendants Phillips and Edwards will be DISMISSED WITH PREJUDICE.

Moreover, given the frivolous nature of Saub's claims, Saub states no basis for injunctive relief against Defendants Phillips and Edwards. *See* 28 U.S.C. § 1915A(b)(1). Accordingly, Saub's claims for injunctive relief against Defendants Phillips and Edwards will also be DISMISSED WITH PREJUDICE.

C. **Judicial Immunity**

In the next series of claims, Saub contends that several magistrates and judges violated his constitutional rights throughout his criminal proceedings.

Judges are absolutely immune from suits under § 1983 for acts committed within their judicial discretion. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). "Absolute judicial immunity exists 'because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation.'" *Lesane v. Spencer*, No. 3:09CV012, 2009 WL 4730716, at *2 (E.D. Va. Dec. 3, 2009) (citations omitted) (quoting *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972), *overruled on other grounds*, *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995)). A judge is entitled to immunity even if "the action he took was in error, was done maliciously, or was in excess of his authority . . . ." *Stump*, 435 U.S. at 356. This immunity extends to magistrates in Virginia. *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987) (citation omitted) (noting that "[a]s judicial officers, magistrates are entitled to absolute immunity for acts performed in their judicial capacity"). Only two exceptions apply to judicial immunity: (1) nonjudicial actions; and (2) those actions "though judicial in nature, taken in complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citation omitted). Neither exception applies in this instance.

Saub alleges that Defendants Perfetti, Trumble, Stahlman, and Owens, the magistrates, erred by issuing search and arrest warrants in Saub's criminal proceedings that were not supported by probable cause. (Am. Part. Compl. 4, 6–7, 9–14, 18, 23, 25–32.) Saub vaguely contends that Dolan and Jackson "are liable for the failure to train, failure to supervise and creating a culture of constitutional defiance and misconduct that directly resulted in the violations of plaintiff's well established rights." (*Id.* at 23, 25–32.) Saub contends that Defendant Councill, the General District Court judge in Isle of Wight County, "err[ed] and acted if not intentionally with gross negligence when simply ratifying the conclusions of the prosecution that on 4-15-15 in Isle of Wight County plaintiff possessed a firearm, used a firearm, and murdered Jean Marie without a single material fact on a single charge." (*Id.* at 17.) Finally, Saub alleges that Defendant Daffron, the Circuit Court judge in Isle of Wight County, erred by upholding various searches and seizures that occurred during the investigation. (*Id.* at 21.) Saub does not allege that the judges' and magistrates' actions amounted to nonjudicial actions or that they acted in the complete absence of all jurisdiction. Accordingly, because they are entitled to judicial immunity, Saub's claims against Defendants Perfetti, Trumble, Stahlman, Owens, Dolan, Jackson, Councill, and Daffron will be DISMISSED WITH PREJUDICE.

D.     **Failure to State a Claim**

1.     **Defendant Isle of Wight County**

Saub also names Isle of Wight County as a Defendant. In his Amended Particularized Complaint, Saub vaguely alleges that Isle of Wight County is "liable for failure to train, failure to supervise and creating a culture of constitutional defiance and misconduct that directly resulted in the violations of plaintiff's well established rights." (Am. Part. Compl. 23–33.) As discussed below, Saub's claims lack merit.

Municipalities are "persons" under § 1983 and, therefore, "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)). However, "under § 1983, local governments are responsible only for 'their *own* illegal acts,'" not for their employees' actions. *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). For Saub to state a claim against Isle of Wight County, he must allege facts suggesting that Isle of Wight County deprived him of a constitutional right "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id.* (alteration in original) (quoting *Carter*, 164 F.3d at 217).

### a. Failure to Train

Saub first contends that Isle of Wight County is liable for failure to train its employees. However, the Supreme Court has underscored the narrowness of liability for failure to train. According to the Court,

> in limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.

*Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)). To state a claim for failure to train, a plaintiff must allege facts suggesting:

> (1) [that] the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) [that] the supervisor failed to train properly the subordinates thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) [that] this failure to train actually caused the subordinates to violate the plaintiff's rights.

*Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 537 (E.D. Va. 2015) (alterations in original) (quoting *Gallimore v. Henrico Cty. School Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014)).

A plaintiff can allege the deliberate indifference element in two ways. First, "[m]unicipal liability for a failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Gallimore*, 38 F. Supp. 3d at 726 (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 397 (1989)). Second "a failure to train claim also can be based on a supervisory power's failure to train its employees concerning an obvious constitutional duty that the particular employees are certain to face." *Id.* (quoting *Brown v. Mitchell*, 308 F. Supp. 2d 682, 704 (E.D. Va. 2004)). Saub's vague and conclusory allegation that Isle of Wight County is "liable for failure to train" fails to set forth facts suggesting that Isle of Wight County was aware of and acquiesced in a pattern of constitutional violations. Moreover, Saub fails to allege with specificity how Isle of Wight County failed to train its employees regarding constitutional duties. For these reasons, Saub's failure to train claim against Isle of Wight County will be DISMISSED WITHOUT PREJUDICE.

### b. Failure to Supervise

Saub also contends that Isle of Wight County is liable for failure to supervise. To state a claim for supervisory liability, Saub must allege facts indicating:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of

constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (citations omitted). Here, Saub fails to allege that Isle of Wight County knew about any conduct that posed a "pervasive and unreasonable risk of constitutional injury" or responded inadequately, and does not show that Isle of Wight County's inaction was the cause for his injuries. Accordingly, Saub's supervisory liability claim against Isle of Wight County will be DISMISSED WITHOUT PREJUDICE.

### c. Culture of Constitutional Defiance

Finally, Saub asserts that Isle of Wight County is liable for creating a culture of constitutional defiance. The Court construes Saub's assertion to be a claim that Isle of Wight County has a custom of allowing constitutional violations. A municipality may violate § 1983 through an unconstitutional custom, or practice; however, "[s]uch a custom 'may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law.'" *Lytle*, 326 F.3d at 473 (quoting *Carter*, 164 F.3d at 220). To allege liability for a municipal custom or practice, "[a] plaintiff must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) (alterations in original).

Furthermore, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice . . . ." *Lytle*, 326 F.3d

at 473 (quoting *Carter*, 164 F.3d at 220). "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Id.* (quoting *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991)). To survive dismissal, a plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994) (citations omitted); *see also Danielson v. City of Va. Beach*, No. 2:11cv253, 2011 WL 3664710, at *2 (E.D. Va. Aug. 19, 2011) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244–45 (4th Cir. 1999)). "Nevertheless, to state a plausible claim, a complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Moody*, 93 F. Supp. 3d at 542 (internal quotations marks omitted) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).

Here, Saub's Amended Particularized Complaint does not contain sufficient factual allegations to permit the Court to make a reasonable inference that Isle of Wight County has a custom of permitting constitutional violations by its employees. *See Hinton v. Hearns*, No. 1:08CV608 (JCC/JFA), 2008 WL 2662974, at *3 (E.D. Va. July 2, 2008) (concluding, under §§ 1915A and 1915(e)(2), that plaintiff had failed to identify any municipal custom or policy so that his claims against the Arlington County Police Department could proceed); *cf. Moody*, 93 F. Supp. 3d at 543 (finding that allegations that the Professional Standards Division of the Newport News Police Department failed to investigate complaints of excessive force that were submitted prior to and after the events complained of were sufficient to state a claim that the City of Newport News "had a custom of failing to adequately investigate claims of excessive force"). Accordingly, Saub's municipal custom claim against Isle of Wight County will be DISMISSED WITHOUT PREJUDICE.

### 2. Defendants Apple, Facebook, Cellco Partnership, and Regus

Saub also alleges that Apple, Facebook, Cellco Partnership, and Regus violated his rights by turning over information to law enforcement officials pursuant to search warrants and for conducting searches as agents of the state.

A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated upon a theory of respondeat superior." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 only when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted).

Here, Saub vaguely alleges that Apple, Facebook, and Cellco Partnership are "liable for failure to train, failure to supervise and creating a culture of constitutional defiance and misconduct that directly resulted in violation of plaintiff's well established rights." (Am. Part. Compl. 25–26, 28–30.) Saub also argues that Apple, Facebook, and Cellco Partnership are liable for conducting illegal searches in reliance on facially invalid warrants. (*Id.*) Saub also contends that Regus is "liable for the unconstitutional warrantless search and seizure" of Saub's office in Orlando, as well as "for failure to train, failure to supervise, and creating a culture of constitutional defiance and misconduct resulting directly in violations of plaintiff's well established rights." (*Id.* at 30.) Saub has made no effort, as he must, "to identify the offending [corporate] policy [or custom] with precision." *Carter*, 164 F.3d at 218. Because Saub fails to identify any policies, much less specific policies or customs of Apple, Facebook, Cellco Partnership, and Regus that deprived him of his constitutional rights, he fails to state a claim for relief. Accordingly, Saub's claims against Defendants Apple, Facebook, Cellco Partnership, and Regus will be DISMISSED WITHOUT PREJUDICE.

### 3. *Miranda*/Fifth Amendment Claim

Saub also contends that on April 18, 2015, "once at the sheriff's office which was dark, closed and empty Potter fed plaintiff then proceeded to interrogate him in a small room without *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] warnings all while Potter kept plaintiff from leaving." (Am. Part. Compl. 5–6.) He further alleges that on April 23, 2015, Defendants Coughlin and Everett conducted an "illegal custodial interrogation," and that Defendants Potter and Coughlin conducted an "illegal custodial interrogation" on April 25, 2015. (*Id.* at 10–11.)

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In order to protect the Fifth Amendment right, when a suspect is subject to "custodial interrogation," he must be warned of certain rights pursuant to *Miranda*. *Miranda*'s safeguards, however, "[are] not themselves rights protected by the Constitution, but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974); *see Connecticut v. Barrett*, 479 U.S. 523, 528 (1987) (*Miranda*'s warning requirement is "not itself required by the Fifth Amendment . . . but is instead justified only by reference to its prophylactic purpose" (citing *New York v. Quarles*, 467 U.S. 649, 654 (1984))). *Miranda* thus only protects against admission into evidence in a criminal case those confessions obtained from those subjected to custodial interrogation by law enforcement officials. *Quarles*, 467 U.S. at 654. Accordingly, any alleged failure by Potter, Coughlin, and Everett "to read *Miranda* warning[s] to [Saub] did not violate [Saub's] constitutional rights and cannot be grounds for a § 1983 action." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (citation omitted).

Moreover, to the extent Saub alleges a Fifth Amendment violation, "the privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal

defendants. . . . Although conduct by law enforcement officials prior to trial may ultimately impair that right, *a constitutional violation occurs only at trial.*" *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (citations omitted) (emphasis added). Saub fails to allege that any statement he may have made to Potter has been introduced against him at trial. Indeed, as noted above, Saub has not yet been criminally tried. Accordingly, Saub's Fifth Amendment claim against Potter will be DISMISSED WITHOUT PREJUDICE.

### E. The *Younger* Doctrine Precludes Review of Saub's Remaining Claims

The remainder of Saub's Amended Particularized Complaint focuses upon various alleged Fourth Amendment violations by Defendants Potter, Coughlin, Everett, Van Wassen, Nurney, and Marshall, all of whom are law enforcement officials for Isle of Wight County. Saub contends that these Defendants obtained illegal search and arrest warrants and conducted various warrantless searches and seizures throughout the criminal investigation. (*See generally* Am. Part. Compl. 4–34.) Saub further alleges that Defendant Stokes, an Assistant Medical Examiner, violated the Fourth Amendment by concealing the time of the victim's death. (*Id.* at 32.) However, as discussed below, the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), precludes review of these claims.

*Younger* provides that it is inappropriate for the Court to address a claim if it would interfere with a pending state judicial proceeding absent extraordinary circumstances. *See Beam v. Tatum*, 299 F. App'x 243, 246 (4th Cir. 2008) (citation omitted). The *Younger* abstention doctrine "expresses a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993) (citations omitted) (internal quotation marks omitted). "*Younger* mandates that a federal court abstain from exercising jurisdiction and

15

interfering with a state criminal proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006) (footnote omitted) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003)). Thus, "federal court equitable interference with state criminal proceedings should not be undertaken except in the most narrow and extraordinary circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). In those narrow circumstances, "federal courts may intervene in state criminal proceedings," but "only when there has been a 'showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief.'" *Id.* (citing *Younger*, 401 U.S. at 54 (emphasis omitted)). Moreover, this Court has concluded that "whether a plaintiff seeks injunctive, declaratory, or monetary relief, abstention is appropriate if the relief the plaintiff seeks would require, as a prerequisite, a ruling on constitutional questions at issue in the pending state proceeding." *Hill v. Courter*, 344 F. Supp. 2d 484, 492 (E.D. Va. 2004).

All three elements of the inquiry are satisfied here. Saub's criminal proceedings are ongoing in the Circuit Court, his challenges to the various searches and his arrest implicate important state interests, and the state courts provide adequate opportunities for Saub to raise these challenges. *See Nivens*, 444 F.3d at 241; *Murphy v. Comm. of Va.*, 896 F. Supp. 577, 582 n.11 (E.D. Va. 1995) (noting that "even the clearest Fourth Amendment violation would not . . . constitute an appropriate exception to the *Younger* abstention doctrine"). Moreover, Saub's Amended Particularized Complaint is devoid of facts suggesting bad faith, harassment, or any other circumstances that would call for this Court to interfere in his pending criminal

16

proceedings. *Gilliam*, 75 F.3d at 903 (citing *Younger*, 401 U.S. at 54). Accordingly, Saub's claims against Potter, Coughlin, Everett, Van Wassen, Nurney, Marshall, and Stokes will be DISMISSED WITHOUT PREJUDICE. *See Gibbs v. State Comm'r*, 558 F. App'x 333, 334 (4th Cir. 2014) (affirming dismissal of civil action without prejudice pursuant to *Younger*).

### F. Saub's Action is Malicious and Frivolous

Having met with no success in State court, Saub has filed the instant action, challenging all aspects of his criminal investigation and proceedings. The Court finds that Saub fails to bring this action in good faith to vindicate his legal rights, but instead brings it maliciously to harass the prosecutors who have been assigned to his case, the magistrates who have issued various search and arrest warrants, the judges who have found probable cause and have upheld various searches and seizures that occurred during the investigation, and the investigators who have been responsible for gathering evidence. For example, Saub alleges that Defendant Trumble "again abandoned the judicial role" when he issued a search warrant for Saub's iPhone on April 19, 2015. (Am. Part. Compl. 6.) He faults Defendant Everett for not knowing that a warrant could not be valid, despite being a "20 year law enforcement veteran." (*Id.* at 10.) Saub refers to Defendant Perfetti as "merely an overpaid human stamp for police," and Defendant Trumble as a "grossly overpaid rubberstamp." (*Id.* at 12.) Accordingly, the Court also will DISMISS this action as malicious and frivolous. *See Cain v. Virginia*, 982 F. Supp. 1132, 1136–38 (E.D. Va. 1997) (citations omitted) (observing that where "the tone of [a prisoner] Plaintiff's allegations indicates that he is bringing his suit merely to satisfy his desire for vengeance against [those involved in securing his incarceration] and not to rectify any wrong done to him, then the suit is a MALICIOUS one" (quoting *Spencer v. Rhodes*, 656 F. Supp. 458, 363–64 (E.D.N.C. Mar. 19, 1987))).

## IV. CONCLUSION

For the foregoing reasons, Saub's claims against Defendants Councill, Daffron, Trumble, Owens, Perfetti, Stahlman, Dolan, and Jackson will be DISMISSED WITH PREJUDICE. Those claims for which Defendants Phillips and Edwards are entitled to prosecutorial immunity will be DISMISSED WITH PREJUDICE. Saub's conspiracy claims, claims against Isle of Wight County, *Miranda*/Fifth Amendment claim, and claims against Defendants Potter, Coughlin, Everett, Van Wassen, Nurney, Marshall, and Stokes will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

Date: 5/1/17
Richmond, Virginia

/s/ John A. Gibney, Jr.
United States District Judge